```
N22CsteA
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                                23 Cr. 20 (ER)

PEACH STERGO,

           Defendant.

------------------------------x

                                    New York, N.Y.
                                    February 2, 2023
                                    4:00 p.m.

Before:

                    HON. EDGARDO RAMOS,

                                District Judge

                        APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
BY: ADAM S. SOWLATI
    Assistant United States Attorney

DAVID PATTON
FEDERAL DEFENDERS OF NEW YORK
    Attorney for Defendant
BY: MICHAEL ARTHUS


ALSO PRESENT:  Meherun Mayer, Pretrial Services Officer

1            (Case called)
2            MR. SOWLATI:  Good afternoon, your Honor.  Adam
3    Sowlati for the United States.  I'm joined at counsel's table
4    by Pretrial Services Officer Meherun Mayer.
5            THE COURT:  Good afternoon.
6            MR. ARTHUS:  Good afternoon.  For Ms. Stergo, Federal
7    Defenders, Michael Arthus.
8            THE COURT:  Good afternoon to you all.
9            This matter is on for an arraignment.
10           Mr. Arthus, let me ask you, have you received a copy
11   of the indictment?
12           MR. ARTHUS:  Yes.
13           THE COURT:  Had you discussed the indictment with your
14   client?
15           MR. ARTHUS:  Yes.
16           THE COURT:  Do you wish a public reading?
17           MR. ARTHUS:  No.
18           THE COURT:  And how does your client plead?
19           MR. ARTHUS:  Not guilty.
20           THE COURT:  Very well.  Let me begin.
21           Has a Rule 5 order been entered in this case as of
22   yet, Mr. Sowlati?
23           MR. SOWLATI:  Your Honor, I believe it has not been.
24           THE COURT:  Let me do that first.
25           Mr. Sowlati, I direct the prosecution to comply with

its obligation under *Brady v. Maryland* and its progeny, to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment and known to the prosecution.

Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will be entering a written order more fully describing this obligation and the possible consequences of failing to meet it. I direct the prosecution to review and comply with that order.

Mr. Sowlati, do you confirm that you understand your obligations and you will fulfill them?

MR. SOWLATI: Yes, your Honor.

THE COURT: Mr. Sowlati, why don't you give me a thumbnail of the case, what this is all about and what is the nature of the discovery and when can it be produced if it has not already been produced.

MR. SOWLATI: Yes, your Honor. The defendant here is accused of defrauding an 87-year-old Holocaust survivor of his life savings. She met the victim around six or seven years ago in an online website, dating website. Shortly after meeting him, she began a fraud where she would ask him to deposit money in her account, claiming that her account was frozen, that

there were arrears that were owed, and that she would pay him back over a course of approximately four and a half years.  She defrauded the victim, as alleged, of approximately $2.8 million.

As for the discovery in this case, the government has submitted a proposed protective order, which the parties have agreed to.  After that protective order is entered, the government plans to produce the bulk, nearly all of the discovery, Rule 16 discovery tomorrow to the defense.

The discovery includes communications between the defendant and the victim; an email exchange between the victim and a person purporting to be a TD Bank employee who, in actuality, was the defendant; fake invoices for diamond purchases created by the defendant; fake letters from TD Bank that were authored by the defendant; recordings of the defendant making fraudulent misrepresentations to the victim; bank account statements from the defendant --

THE COURT:  So there were recordings?

MR. SOWLATI:  There were, that were made by the victim, his family member.

THE COURT:  Okay.

MR. SOWLATI:  Bank account statements from the defendant's and the victim's bank accounts; various materials related to forfeiture, including materials from entities where the defendant made purchases using fraudulent funds; and bank

1    account statements for the people and entities who received
2    fraudulent funds; excerpts of interviews of the victim and
3    family members; an image of the victim's phone; a backup hard
4    drive from the victim.
5             In addition, the government has obtained a number of
6    warrants in this case that will be produced, including the
7    affidavits and the returns that --
8             THE COURT:  I'm sorry.  Repeat that.  What affidavits?
9             MR. SOWLATI:  The affidavits for the warrants.  We
10   will be producing those, as well as the returns that it has
11   obtained to date.  Those warrants are, first, a search warrant
12   for the fake TD Bank employee that I mentioned earlier and the
13   returns for that warrant --
14            THE COURT:  I'm sorry.  A search warrant for what?
15            MR. SOWLATI:  For the fake TD Bank employee that was
16   corresponding with the victim in this case.
17            THE COURT:  You're losing me.  So you subpoenaed a
18   fake employee?
19            MR. SOWLATI:  So there is a Gmail account from
20   somebody purporting to be a TD Bank employee that was
21   corresponding with the victim in this case and telling the
22   victim to deposit funds into the defendant's bank account.
23            THE COURT:  So you subpoenaed a Gmail account for that
24   person?
25            MR. SOWLATI:  We obtained a warrant for that account.

1           THE COURT:  Okay.
2           MR. SOWLATI:  Yes, your Honor.  So we will be
3  producing the returns from that account as well as the warrant
4  and the affidavit itself.
5           A second warrant is a premises search warrant for the
6  defendant's home and the returns in the form of property
7  vouchers, which show the various luxury goods the defendant
8  purchased with the fraudulent proceeds, and photographs from
9  the premises.
10          Third, and finally, a search warrant for the
11 defendant's Hotmail e-mail account.  The government has not yet
12 obtained the returns for that Hotmail account, but we'll
13 produce those returns when it has them.
14          A few additional notes on discovery.
15          There were no postarrest statements.  As noted, we do
16 not have returns for the defendant's Hotmail account.  We also
17 recovered two devices, electronic devices from the defendant's
18 residence, an iPhone and an iPad.
19          THE COURT:  When was that?
20          MR. SOWLATI:  That was at the time of arrest on
21 January 25th.
22          THE COURT:  I take it those items have not yet been
23 imaged?
24          MR. SOWLATI:  That's right.  We do not have access to
25 them yet.  They're password locked and we are attempting to

N22CsteA

1  gain access to those devices but do not have access yet.
2              THE COURT:  Very well.
3              MR. SOWLATI:  And that's the summary, essentially, of
4  the discovery.
5              THE COURT:  And you also mentioned a telephone from
6  the defendant?
7              MR. SOWLATI:  Yes.
8              THE COURT:  Has that been imaged?
9              MR. SOWLATI:  No, neither the iPad nor the iPhone that
10 we obtained on January 25th have been imaged.
11             THE COURT:  So entirely possible that whatever you
12 obtain from those devices may be at least as great, if not much
13 greater than the actual discovery that you will be able to turn
14 over tomorrow?
15             MR. SOWLATI:  That's certainly possible, your Honor,
16 yes.
17             THE COURT:  Mr. Arthus, sir, how do you wish to
18 proceed?
19             MR. ARTHUS:  So I would say put this on for a
20 conference date for me to review the discovery.  It actually
21 sounds like the discovery will be fairly voluminous and may
22 need to be looked at by a forensic accountant.
23             I also want to point out, so the Court is aware, that
24 she may be retaining in this case, so that may be another issue
25 that comes up during this adjournment.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N22CsteA

1        THE COURT:  Obviously, let us know that as soon as you
2   are able.
3        So we'll set a date.  About how long do you think,
4   Mr. Arthus?
5        MR. ARTHUS:  If I get the discovery tomorrow, I think
6   early March should be fine for me to go through it with her.
7        THE COURT:  Ms. Rivera.
8        MR. SOWLATI:  Your Honor, if I may just note on the
9   record, the victim here is 87 years old and he's of ill health.
10  It's the government's hope to proceed as expeditiously as
11  possible in these proceedings, including setting a trial date
12  as soon as possible and as soon as the Court would reasonably
13  allow.
14       THE COURT:  Okay.  I thought that might be the case.
15       How long will this case take to try if you are able to
16  make an estimate at this point, Mr. Sowlati?
17       MR. SOWLATI:  Your Honor, I would say about two weeks.
18       THE COURT:  Ms. Rivera.
19       THE DEPUTY CLERK:  March 2 at 11:30.
20       THE COURT:  Not that soon.  They haven't gotten any
21  discovery yet.
22       MR. ARTHUS:  Are we discussing a trial date?
23       THE COURT:  Yes.
24       THE DEPUTY CLERK:  I'm sorry.  That was the next
25  conference date.

1       MR. ARTHUS:  I still think I would need a conference
2  to actually go through discovery, especially if retained
3  counsel winds up stepping in.  It also sounds like there is
4  going to be fairly substantial motion practice in terms of the
5  search warrants and I can't imagine that this would not require
6  the services of a forensic accountant, and there's no way that
7  can be pulled together in a few weeks, obviously.  I'll move as
8  expeditiously as possible, but this is also a sizeable amount
9  of stuff.
10       THE COURT:  Mr. Sowlati, you might want to consider
11  whether it would be possible to preserve the testimony of the
12  victim by way of deposition.
13       MR. SOWLATI:  Yes, your Honor.  That is something that
14  we'd like to pursue.
15       THE COURT:  Okay.  I don't believe, based on my
16  current trial schedule, that I will be able to try this case
17  before the summer in any event.  Why don't you and Mr. Arthus
18  speak some more.
19       When are we first available, Ms. Rivera?
20       THE DEPUTY CLERK:  About mid June.
21       THE COURT:  Mid June.  So that's five months out.
22       THE DEPUTY CLERK:  June 12 is the earliest.
23       THE COURT:  So we'll pencil in June 12 for trial.
24       MR. ARTHUS:  Just as a note, Mr. Sowlati and I
25  actually have another trial June 5th.

N22CsteA

1          THE COURT:  Is that going to be a two-week trial?
2          MR. SOWLATI:  That should be a much shorter trial,
3  your Honor.  If we are able to do it towards the end of June,
4  if there's availability, that might give a little bit of a
5  buffer, or beginning of July.  Obviously, this is something,
6  given the victim's age, we're willing to proceed as fast as
7  possible.  So if June 12th is all that's available for the
8  Court, we'll proceed that date.
9          THE DEPUTY CLERK:  June 26.
10          MR. SOWLATI:  Okay.
11          THE COURT:  Now on the issue of bail, is there
12  agreement to a bail package?
13          MR. SOWLATI:  Your Honor, the government is going to
14  agree to the same bail package that was set forth in the Middle
15  District of Florida.
16          THE COURT:  Very well.  Ms. Mayer, any objection to
17  that?
18          MS. MAYER:  No objection.
19          THE COURT:  For the record, what are those conditions,
20  Mr. Sowlati?
21          MR. SOWLATI:  Yes, your Honor.  They are an unsecured
22  bond binding the defendant to pay the United States the sum
23  of --
24          THE COURT:  I'm sorry.  You need to slow down.
25          MR. SOWLATI:  An unsecured bond binding the defendant

to pay the United States the sum of $100,000 in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed;

  Second, report as directed by the Pretrial Services office;

  Third, maintain or actively seek employment;

  Forth, surrender any passport to the clerk of the U.S. District Court;

  Fifth, obtain no passport;

  Sixth, abide by the following restrictions on personal associations, place of abode, or travel.  Defendant is restricted in residence and travel to the Middle District of Florida or the Southern District of New York, may travel to the Southern District of Florida at the discretion of Pretrial Services;

  Seventh, substance abuse evaluation and any recommended treatment;

  Eighth, mental health evaluation and any recommended treatment;

  Ninth, refrain from possessing a firearm, destructive device, or other dangerous weapon;

  Tenth; refrain from excessive use of alcohol;

  Eleventh, no contact with any witnesses or victims;

  Twelfth, refrain from any use or possession of a narcotic drug or other controlled substance in 21 U.S.C.

1  Section 802, unless with prior written approval of the Pretrial
2  Services officer or as may be lawfully prescribed in writing by
3  a licensed medical practitioner;
4              Thirteenth, report as soon as possible to the Pretrial
5  Services office any contact with law enforcement personnel,
6  including but not limited to any arrest, questioning, or
7  traffic stop;
8              Fourteenth, do not be in possession of any personal
9  identification of others except those of own children; and
10             Fifteenth, do not open any new business, line of
11 credits, or bank accounts.
12             THE COURT:  I hate to step on agreement between the
13 parties, but shouldn't she also be allowed to fly into the
14 Eastern District?
15             MR. SOWLATI:  Yes, your Honor, that should be amended
16 to allow that.
17             THE COURT:  And I understand that she owns a gun.
18             MR. ARTHUS:  That has been surrendered already in
19 Florida, as well as the passport was surrendered in Florida.
20             THE COURT:  The gun was surrendered to law
21 enforcement?  The information that I have is that she handed it
22 over to a friend.
23             MR. ARTHUS:  Yes, and I believe in the report it was
24 or the recommendation was to either surrender it to law
25 enforcement or to a lawful gun owner.  So I believe she's done

1    that, the second one.  If you would rather she surrender it to
2    law enforcement, that's certainly fine.  She would just have to
3    get it back at that point, which would possibly be complicated.
4              THE COURT:  Mr. Sowlati, do you have a view?
5              MR. SOWLATI:  My view is she should surrender it to
6    law enforcement.  That's my view.
7              THE COURT:  Very well.  So that will be amended, as
8    well.
9              MR. ARTHUS:  For her to obtain it and then surrender
10   it?
11             THE COURT:  Or have the person surrender it directly
12   to law enforcement.
13             MR. ARTHUS:  Okay.  Just, in terms of a Rule 12
14   schedule for motions, I don't know how the Court typically
15   handles --
16             THE COURT:  I typically allow defense counsel to
17   review discovery and tell me how he wishes to proceed.
18             MR. ARTHUS:  Okay.
19             THE COURT:  Mr. Sowlati, if you think that based on
20   the exigency of the victim's age, I can certainly set a motion
21   schedule now.
22             MR. ARTHUS:  Probably makes sense for me to sort
23   through and see what the motions even would be.  So that would
24   make the most sense to then contact the Court.
25             THE COURT:  Very well.  So we'll wait to hear from you

1    and we'll see you March 2 at 11:30 a.m.
2              This will have be to modified to add the Eastern
3    District and to direct her to surrender the gun.  Okay.
4              Anything else, Mr. Sowlati?
5              MR. SOWLATI:  Nothing else from the government, your
6    Honor.
7              MR. ARTHUS:  Should she sign the new bond here or
8    should she go to the clerk's office?
9              THE DEPUTY CLERK:  She has to go to the clerk's
10   office.
11             MR. ARTHUS:  Okay.
12             THE COURT:  Speedy trial, Mr. Sowlati.
13             MR. SOWLATI:  Yes, your Honor.  In order to give the
14   defendant time to review the discovery produced by the
15   government and the parties to discuss a pretrial resolution to
16   this matter and for the defendant to produce any motions, the
17   government submits that the ends of justice support excluding
18   time until the March 2nd, 2023 conference.
19             THE COURT:  Any objection?
20             MR. ARTHUS:  No.
21             THE COURT:  So the time between now and March 2nd will
22   be excluded under the speedy trial clock.  I find that
23   Ms. Stergo's interest in excluding that time outweigh the
24   interests of the public in a speedy trial for the reasons set
25   forth on the record by Mr. Sowlati.

1              With that, we are adjourned.
2              Mr. Sowlati, Ms. Mayer, Mr. Arthus, welcome.
3                              * * *